phrase in this entire specification changes the result that Judge Bullock reached after reading it and putting it in context and considering it as a whole. The fact that you might be able to do additional things doesn't change the basic construction, or the fact that the invention is directed to two different methods of communication being wireless, non-wireless, etc. You may be right, but it certainly raises a question. In a 42-column patent, a careful lawyer can always find one thing that he claims is inconsistent, but Judge Bullock took account of the whole context and read it in that light and the conclusion on claim construction was right. The only other patent-related issue before I turn to remedies in the statute is the GSM. The main point on GSM, which they have argued is an invalidating reference, is that Judge based on facts that it was not a single reference, as Judge Bryson pointed out. Their expert testified that the GSM is three to four hundred references drafted by ten or more subgroups. Each subgroup has at least one author. Each reference has its own title, its own pagination, and its own text, and even Ms. Poitet hadn't read them all, as Judge Rader pointed out. So the finding, which was a finding of fact, was that this is not prior art because you can't point to eleven different portions, which they did, of the GSM and claim that that is a single reference, particularly where they're all authored by different people. The Commission argued that this wasn't publicly accessible because it's somehow confidential, but isn't the ETSI network so all-encompassing with its membership that that confidentiality is in effect public? I don't think so, Your Honor, but I wouldn't stand on that. I would point out that at the time the GSM was built. I don't think so. Isn't almost everyone of skill in the art probably underneath the confidentiality agreement? Perhaps today, but when these were drawn, I mean, we're going back to the time of the application and we're going back in time somewhat. You're talking about prior art. So the question is back then, prior to the application for this. So you'll defend the confidentiality, lack of public access? Excuse me? You'll defend that? But I think the stronger point clearly is it's not a single reference, as Judge Bryson pointed out, it's 400 of them. As a policy matter, I'm very concerned about when we're starting to talk about standards, about allowing somebody—we have lots of patent-related problems with people that manage to get patents on chunks of standards, but to do it after the standards exist seems to be a really mischievous, risky proposition because you end up having a standard that everybody is essentially compelled to comply with, and then you have somebody going in and locking up a chunk of it. That's not what happened here, though, Your Honor. I mean, the patent application was in process. The standards evolve over time. I'm not sure even at what point in time they're claiming they were fixed for the purposes of anticipation, and the standards certainly do not contain all the limitations of the 9-8-3-1. But they don't have to be fixed. They just have to be publicly accessible. That's right, but they have to contain in them something that anticipates the claims of the patent. You just said something that's a new point to me, at least. You say that one answer to the anticipation argument is the standards don't anticipate, even if they are a single reference? Yes, they were, and we have a number of points on that line that Judge Bullock didn't consider because he found that the GSM standards are not a reference. Okay, but this isn't, it isn't presented as part of this appeal. No, no. Okay. I mean, if... I was afraid that I'd missed a chunk of your argument. If the court were to reverse Judge Bullock's ruling, Judge Bullock would have an opportunity to review the GSM, but he found that it was not a single reference. So let me turn to the statute and the remedy. First of all, just several points are important. The party in the best position to defend infringement was Qualcomm. They manufactured the chips that we are proceeding against. They were in the case from start to finish and defended vigorously, as you saw here again today. Secondly, the process here was such that... Well, why not just name all of them? Just as was suggested, I think, by Mr. Starr, you could have just found the license agreements and called them all in. Well, completely impractical, Your Honor. I mean, you've got... Well, the commission really sort of suggested that ought to have been done. Excuse me? The commission seemed to have suggested that that would have been the preferable course, right? Well, the commission said it's always better to name more if you can, but it's not a requirement. No, but they didn't seem to take the view that it just couldn't have practically been done. No, but I think on this appeal and in light of the broad changes that the interveners are seeking, imagine this. In this situation, there are dozens of customers, dozens of customers of Qualcomm. We don't even know who they all are. Two of the appellants here didn't become customers until last year. Foxconn and Sichuan Hui were not even customers at the outset. The notice said we're proceeding against the chips and we're proceeding against those chips as used in cell phones and other electronic devices. So anybody that was paying attention and, by the way, the commission found that all these interveners had that notice and were on notice by the summer or fall of 2005, long before the liability hearing, that this was ongoing. Several of them joined in joint defense agreements with Qualcomm. Several others were subpoenaed. They were all provided with the expert report from Dr. Mulhern that laid all this out. So they were all on notice that we were proceeding against these chips. They all had an opportunity to either participate through and with Qualcomm or intervene, and the ones that made requests to intervene timely in the remedy proceeding did intervene, and they've had more process than many criminal defendants have. They participated fully in discovery. Thirty-eight depositions were taken. They participated in the evidentiary hearing before Judge Bullock. They participated in the two-day hearing before the full commission. They all submitted presentations to the United States Trade Rep, which has the authority to veto the remedy. They've had an enormous amount of process and, by the way, their input was respected. They got an order that is very, very favorable to them because right now we're standing three years and more after we filed. We have multiple findings of infringement by Qualcomm, direct infringement and induced infringement. We still don't have any remedy against the interveners because all of their devices that were on sale as of June of 2007 have been exempted by the grandfather provision, and, of course, even the remaining order has been stayed as to the interveners as we stand here today. But I take it, while it's all very well that they had all this process at the remedy stage, your position, I take it, is the same as the commission's, which is the statute didn't require any of that. That's true. I mean, they could have, the commission just could have said drop dead to all of the would-be interveners at any stage, and it would have been just fine as far as the statute goes. Well, the way the statute... And the Constitution as well. The way the statute works, Your Honor, I mean, the question for the panel is, is the ITC's long-standing, and it is long-standing, interpretation of this statute reasonable or not? Not whether there might be other ways to read it, but is theirs reasonable? Remember, this statute started off in personam. In the old days, you had to actually sue foreign manufacturers, and it turned out that never works because you either can't get jurisdiction or you can't find all the importers or you name ten importers and then ten more spring up when you're done. So this statute is in realm. It operates against the article. And the whole notion of it is you must begin by suing the manufacturer of the article and proving infringement and proving importation. And we did that. We proceeded against Qualcomm, which admittedly is in the best position to defend these. Now, because the statute says that once there's a violation, the commission shall exclude all affected items, the commission looks to whether or not there needs to be a downstream remedy. That's how they get there. But does the provision of some opportunity to be heard at the remedy stage adequately address their concerns about being heard at the liability stage? Absolutely, for two reasons, Your Honor. The manufacturer, the only chip, the only product, the only article that has been found to infringe is these baseband chips made by Qualcomm. Now, there was nothing preventing any of the interveners from seeking intervention earlier and certainly nothing preventing them from assisting Qualcomm in its defense. And we're certainly not hearing any new non-infringement defenses from any of them. All they're saying is, well, we weren't there. But they had the opportunity to be there. And once the chip is found infringing, as it was, then you have to have a regime, and the ITC recognizes this, where you try to protect against all forms of importation. But it's not just the chip. It's the software and the question of how the software itself was implemented. That's correct, Your Honor, but the commission found, Judge Bullock found, that the software directly infringed the claims of the patent. But the point is that the different handset manufacturers can argue that their implementation of the software wasn't sufficient to meet the term. They had, they had, Qualcomm had every incentive to do that in the liability phase of the hearing, and Judge Bullock found that although chipset makers can change them, there was absolutely no evidence that they had changed them. I mean, Qualcomm. But they weren't parties. But Qualcomm is the one that provides this chip and the software to its design partner. But again, there's no, there was, the parties were not there during the liability phase to argue that their implementation doesn't meet the terms of the claim. But Judge Bullock found that the chip itself, Your Honor, with all the software, infringes. The fact that you can change it. The persons, in this case, I guess, the importers, were persons violating the provision of the section. That has to be part of your argument. They were. They were. So, this is a case in which a person found to have violated a provision of the section is not a party to the proceeding in which that person was found to violate the section, right? No. Your Honor. And that's a fair statement, isn't it? Well, except for this, the person, the language of D1 is intended to make sure that you don't sweep in somebody who has a right to import, as Ms. Kaysen said. Because obviously, the patentee can import, licensees can import, the federal government can import. So, all D1 provides is that you act against the article, and then once the article made by a specific manufacturer, your Qualcomm, and you've identified specific articles, namely these chips. Once they infringe, then anyone who imports them without a license or without authority is in violation. So, you would read, I take it, this language, imported by any person violating the provision of this section, as if it read imported except by a person authorized to import. That's another way. That's the way the Commission has always read it, and that's a reasonable way to read it. And I would suggest that if the thing that the interveners are now asking, they want to go back to the impersonum days. They want to go back to the days when you have to name every person. One more minute, Mr. Van Ness. That is, thank you, Your Honor, that is completely impractical in a case like this. It's impractical to name every importer. It's impractical to name even every customer. We don't know who all the customers are, and some of those customers showed up after the proceeding began. So, if you're going to turn this back into an impersonum, then, number one, that is going to completely gut the ITC's ability to effectuate the purpose of the statute, which is to give patentees a right to protect their property, and number two, you're ignoring 20 to 30 years of interpretation of this statute by the ITC. This change that they're talking about was made in 1994, 14 years ago, for an entirely different purpose. It had nothing to do with downstream remedies, nothing to do with limited exclusion orders. It had only to do with the practice of issuing general exclusion orders where you didn't even identify the Qualcomm in the case. You simply proceeded against an article generally with no reference to the manufacturer. That's not what happened here. That's not a basis to rewrite the statute based on anything that happened in this case. Thank you. With the final rebuttal from Mr. Phillips and Mr. Starr, our time will be almost even. Mr. Phillips, you have three minutes, and Mr. Starr will have three. Is that correct? Yes. Thank you, Judge Rader. I appreciate it. Let me start off with the specific intent issue in this case. Judge Rader, you asked the ITC's counsel specifically, what's the standard? She acknowledged that the standard is intent to infringe, and then you go to page A448, which is the specific place where the ALJ is analyzing, what is the intent that I'm looking at? And it says Broadcom asserts the intent to cause the acts that cause infringement. That is verbatim, general intent. And then in the next page he says Broadcom has failed to prove, and it gives Qualcomm's counterargument and then says the undersigned finds Broadcom's arguments to be persuasive. To be sure, there are findings there, and it may be that in a different case you could find specific intent, but the truth is there is not a finding of specific intent in this case, which is absolutely clearly required and absolutely requires that this matter be vacated and remanded, notwithstanding all of the very interesting issues that are out there. Candidly, that is the simplest way in which to set this aside. With respect to the question of the means of interpreting the claim in this case, Judge Lynn, it seems to me we're not playing on a level playing field. The language of the claim is extremely broad. It says a communication different from another communication. So it is incumbent on the other side to come up with something that very clearly limits that language. And to stand here and say to you, well, sure, there's language in column 39 that reads precisely the way I suggested it should be read. And candidly, I think if you read figures 11 through 20 and all that accompanies them, where they're talking about polls for data and responses back and forth, those are themselves not methods of communication. Those are simply different communications. It simply cannot satisfy their required burden to show that the specification imposes the kind of limitation that the Commission adopted in this particular case. And if that's true, if the claim construction is wrong, then the matter ought to be vacated and sent back to the Commission to evaluate it against the proper claim construction and determine the validity. Finally, with respect to the GSM, Ms. Pottet specifically said that's a single reference. It's ETSI's reference. To be sure, it's written by a lot of people, but lots of patents have lots of inventors who participate in the writing of that process. That's not the issue. The question is, is there a single document to which you can turn? And Judge Bryson is absolutely correct when he says that if you cannot use these standards as a guidepost, you make a terrible mistake as a matter of policy. We'd urge you not to do that. Finally, there were a number of statements that we were found to have directly infringed. We never directly infringed. The only claim against us is inducing infringement, and on that, there is no specific attachment. Thank you, Your Honor. Thank you, Mr. Carter Phillips. Mr. Starr. Thank you, Your Honor. Several brief points. The Commission said we should have intervened. Broadcom suggested we should have intervened. From both, it comes with ill grace. We tried. Broadcom opposed. Your Honor, this is classic gamesmanship. Why didn't you try to intervene? Verizon did. They opposed. I remember something called litigation stoppable. Wasn't it kind of late? Oh, not at all. Litigation, as you know, Judge Rader, better than I, moves very quickly in the ITC. It is behind a veil of confidentiality. We found out, I represent to the Court, a number of us on this side of the table found out with the expert report, and then alarm bells started to go off. They opposed it. They should not be heard to say, why didn't you intervene? What they should be heard to stand to account is, why didn't you name them? This Court has spoken to this very point through the voice of Judge Dyke. They rely on the Commission's longstanding interpretation. We rely on the law of the Federal Circuit. The Federal Circuit has said limited exclusion orders only apply to the specific parties before the Commission in the investigation. Is this the Fujifilm? It is. Also, with respect to the meaning of gap, because Commission's counsel brings to mind Justice Holmes' observation. We see what Congress is striving at, but they didn't say so precisely, and so we shall go on as before. But here, Congress did say precisely what D2 means as we have interpreted it. One would have to engage in judicial creativity in order to determine that somehow parties does not mean us. Now, to allow this to stand is going to build in very perverse incentives that the Commission itself has said, please name the respondents. Broadcom says, oh, we just don't know who they are. False. I think Judge Rader responded to that. But if it is difficult, put yourself to the burden of seeking a general exclusion order. That's what Congress provided. Much discussion with respect to NREM. A red herring. Procedural process rights do attach to NREM proceedings. And the final thing I want to say, the only evidence in this record was a single European handset. That is not substantial evidence. I thank the Court for its objection. I think I speak for the panel in thanking all counsel for their help today. All rise.